**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000009
24-JUN-2015
08:07 AM**

NO. CAAP-13-0000009

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


RONWILL, INC., by and through agent
JL REALTY, INC., Plaintiff-Appellee, v.
MARY LOU PALMER, dba DESIGN FOR LIVING, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1RC11-1-10857)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Counterclaimant-Appellant Mary Lou Palmer, aka Mary Lou Doescher, dba Design for Living (**Palmer**), appeals from the Judgment filed on December 6, 2012, in the District Court of the First Circuit, Honolulu Division (**District Court**).[1]

On appeal, Palmer contends the District Court (1) erred by granting Plaintiff-Counterclaim Defendant-Appellee Ronwill, Inc.'s (**Ronwill's**) Motion for Protective Order, filed on September 28, 2012, (2) erred by denying his motion to exclude testimony of Keith Lee (**Lee**) because he acted as both an agent and attorney for Ronwill and invoked the attorney-client privilege during his deposition when asked about discussions between himself and directors of Ronwill regarding alleged overcharging of rent to Palmer, (3) abused its discretion by

---

[1] The Honorable Hilary B. Gangnes presided over the Motion for Protective Order and the Honorable Michael K. Tanigawa presided over the trial.

limiting Palmer's testimony, (4) erred by finding that equitable estoppel was not applicable to Ronwill's statute of limitation defense to Palmer's counterclaim, and (5) clearly erred in entering Findings of Fact (**FOFs**) 2, 7, 8, and 13.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Palmer's points of error as follows:

(1) Palmer filed a counterclaim for breach of contract on the basis that she was overcharged rent because the original lease agreement stated that her space was 1190 square feet, but her space was actually 884 square feet. After conducting some discovery, Palmer sought additional discovery including documents from Ronwill related to Palmer and other tenants of the property since 1986, when she first entered into a lease agreement with Ronwill, admissions regarding Ronwill's representations to Palmer, Ronwill's communications with Palmer, and Ronwill's business dealings with Palmer and another tenant. It appears the additional discovery requested by Palmer was related to proving the size of the space she rented, and representations made to her regarding whether she would receive a credit for rent she allegedly overpaid due to her space being smaller than the description in the lease agreement. However, the District Court granted Ronwill's Motion for Protective Order and precluded further discovery by Palmer.

Even assuming, *arguendo*, that the District Court erred by precluding Palmer from conducting additional discovery, it was harmless error. The District Court found that it was not reasonable for Palmer "to have relied on representations that [Lum] would look into the matter, not to worry about it, and that some adjustment would be made." Thus, the District Court accepted Palmer's testimony that Ronwill's agent made representations to Palmer as she alleged, but rejected her claim that she was entitled to relief based on such representations. Therefore, additional discovery regarding those representations was not necessary.

The District Court ultimately concluded that equitable estoppel did not bar Ronwill from asserting the statute of limitations because Palmer's alleged reliance upon Ronwill's agent's vague representations was not reasonable and thus Palmer's claims based on alleged events more than six years prior to filing the counterclaim were barred by the statute of limitations. In addition, the District Court concluded in Conclusion of Law (**COL**) 8 that Palmer "also did not rely on the vague representations to her detriment because her testimony that she did not move because of the representations was not credible but her testimony that she did not move due to the disruptive impact a move would have on her business was credible." Accordingly, additional discovery relating to the size of her space would not have aided Palmer in establishing an overcharge or credit for the period barred by the statute of limitations.

Indeed, Palmer claimed that in 2003 she discovered that the space she had been renting was smaller than specified in her lease agreement. However, Palmer continued under the same month to month lease until 2012, when Ronwill moved to evict her for failure to pay rent in full from 2009 to 2012. There is no dispute that by May 2008, Palmer had been notified by Ronwill's agent, James Ogawa (**Ogawa**), that her rent was for only 884 square feet of space. Therefore, further discovery from Ronwill concerning the size of the space or representations regarding a credit would not have aided Palmer in either defending against Ronwill's claim for unpaid rent from 2009 to 2012 for a space consisting of 884 square feet or establishing an overcharge or credit for the period not excluded by the statute of limitations because no Ronwill agent made any representations from 2008 to 2012 about a credit.

(2) The District Court did not err by denying Palmer's Motion in Limine to exclude Lee as a witness. In Palmer's Motion in Limine which sought to strike Lee as a witness, Palmer argued that Lee should be prevented from testifying since he invoked the attorney-client privilege during his deposition and provided very little relevant information regarding historical information.

On appeal, Palmer again claims that Lee should not have been allowed to testify because he invoked the attorney-client privilege which prevented Palmer from discovering what he knew and the District Court relied upon his testimony in FOFs 36 and 37.

Naming a witness who that acted in a dual capacity as counsel and as an agent does not waive the attorney-client privilege. Anastasi v. Fidelity Nat. Title Ins. Co., 134 Hawaiʻi 400, 423, 341 P.3d 1200, 1223 (App. 2014) cert. granted, No. SCWC-30557, 2015 WL 3384471 (May 22, 2015). Communications primarily or predominately of a legal character are privileged while other communications and files are discoverable to the extent they are not protected. Id. Thus, Lee's invocation of the attorney-client privilege during his deposition does not justify exclusion of Lee at trial if he had other relevant non-privileged information. During Lee's deposition, Palmer inquired about Lee's communication with Palmer and his personal knowledge about the space Palmer rented. During trial, Palmer did not object to Lee's testimony regarding his communication with Palmer or his knowledge about Palmer's rented space. FOFs 36 and 37 summarize Lee's testimony regarding those two issues. In addition, Lee's testimony regarding his communication with Palmer and his knowledge about Palmer's space did not reveal any information for which he previously invoked the attorney-client privilege in his deposition. Thus, there was no ground to preclude Lee from testifying about those subjects.

(3) We conclude that the District Court did not abuse its discretion by limiting Palmer's testimony. Palmer argues that the District Court imposed an ending time of 3:30 p.m, imposed a two-hour time constraint to Palmer's case, and "cut out" critical parts of her testimony. Palmer also argues that she should have been "allowed to testify more than two hours and comeback on another day if needed."

The case was called on October 2, 2012 at approximately 8:49 a.m. After some preliminary matters, Ogawa was questioned. Lee was then called as Ronwill's second and final witness. Prior

4

to the conclusion of Lee's direct examination, the District Court noted that it was approaching 11:30. Ronwill's counsel stated that he had about ten more minutes of questioning and Palmer's counsel agreed to perform his cross-examination after lunch. Lee's cross-examination was conducted before the court took a recess at 11:42 a.m. When the case resumed at 1:12 p.m. Palmer was called as the first witness in her case. After some time, the District Court noted that it was 2:30 p.m. and inquired how much longer Palmer would testify. Palmer's counsel stated that he had another hour of questioning to which the District Court responded that the time schedule was made clear in the morning. Palmer's counsel then stated it was not a problem but he had anticipated calling Palmer at 10:30 or 11:00 a.m. and did not know Ogawa would require extensive cross-examination. The District Court noted that Palmer's counsel gave no indication at the close of the morning session that he would have a problem finishing that day and did not accept that the inability to conclude trial was the result of Ogawa's cross-examination. The District Court stated that it expected the case to conclude that day. Palmer was then cross-examined and Palmer's counsel conducted a short re-direct examination. Palmer then called her second and final witness.

Only after resting her case, Palmer's counsel commented: "Well, Your Honor, let me just place on the record that I felt rushed and my client's case is prejudiced in the event that you do rule against us." Counsel then made an offer of proof as to what other testimony he would have elicited from Palmer. Counsel's feeling that he was rushed is not equivalent to the District Court curtailing or cutting short Palmer's testimony. Palmer's counsel ended his direct examination of Palmer by stating "Um, no further questions, Your Honor." After cross examination, Palmer's counsel then conducted re-direct examination. Palmer also called another witness before resting her case. At no time did Palmer's counsel request a continuance to conduct further examination of Palmer. There is nothing in

the record to support that the District Court ended Palmer's testimony prematurely or precluded any of her testimony.

(4) The District Court did not err by finding that equitable estoppel was inapplicable under the circumstances of this case. Palmer claims that Lum's representations regarding a credit for alleged overpayment of rent caused her to delay seeking damages for breach of the lease agreement and, thus, Palmer claims that Ronwill should not be able to invoke the statute of limitation as a defense against her counterclaim.

In <u>Vidinha v. Miyaki</u>, 112 Hawai'i 336, 342, 145 P.3d 879, 885 (App. 2006), this court stated:

> It is well-settled that "'a defendant cannot avail [her or] himself of the bar of the statute of limitations, if it appears that he [or she] has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him [or her].'" <u>Mauian Hotel, Inc. v. Maui Pineapple Co.</u>, 52 Haw. 563, 570-71, 481 P.2d 310, 315 (1971) (quoting <u>Hornblower v. George Washington Univ.</u>, 31 App. D.C. 64, 75 (1908)). "One invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable." <u>Doherty v. Hartford Ins. Group</u>, 58 Haw. 570, 573, 574 P.2d 132, 134-35 (1978) (citations omitted).

The District Court held that Lum's representations were vague and that Palmer could not have reasonably relied upon them. The District Court did not clearly err in finding that the alleged representations by Lum were vague and not sufficiently definite to convey that Palmer would receive a specific amount of credit. In addition, there was no evidence that Palmer informed Ronwill that she might sue for damages or that she would have terminated her month-to-month lease if she did not receive a credit. Palmer contended that she detrimentally relied upon Lum's representations when deciding not to move her business, as evidenced by an Offer to Sublease at another location in 2004. However, Palmer also testified that she first considered moving in 2001, well before she discovered the discrepancy in the amount of space in 2003. Palmer also admitted that the disruption of moving would have impacted her business and was a factor in her decision not to move. Thus, Palmer failed to demonstrate that

6

she relied upon any representation to her detriment because she had already contemplated moving prior to Lum's representations and the District Court concluded, in COL 8, that Palmer did not move her business because it would be disruptive and did not find Palmer's testimony that she relied on Lum's representations to be credible.

The District Court did not clearly err in finding that Palmer's alleged reliance upon any representations by Lum was unreasonable. Palmer made consistent payment on the month to month lease from 2003 to 2008 and then sporadically from 2009 to 2012. Both Palmer and Lum had stated that they wanted to resolve the issue by entering into a new lease, in writing. The 1993 lease agreement also required that any changes to the terms be made in writing. Palmer also requested that any credit be memorialized in the new written lease agreement. However, there was no written modification to the agreement or new lease agreement between the parties. It was not reasonable that Palmer relied upon Lum's oral representations that a credit was forthcoming when she demanded a written acknowledgment or a new lease agreement that never materialized. Palmer waited nearly six years before asserting her claim for damages based upon failure to provide her a credit for overpaid rent and only then, as a counterclaim to Ronwill's complaint for damages and summary possession.

(5) FOFs 2, 7, 8, and 13 are not clearly erroneous. Palmer argues that FOF 2 erroneously found that the lease clearly states that the space is 1190 square feet. However, FOF 2 simply states that in one part of the lease the space is described as 1190 square feet, but in another part, where it mentions the monthly rent, it does not reference a rate per square foot or the size of the space. FOF 2 accurately reflects the content of Defendant's Exhibit F and, therefore, is not clearly erroneous.

FOF 7 is not clearly erroneous because it does not infer, as Palmer contends, that the dispute is about 1234 Kaumualii Street instead of 1236 Kaumualii Street.

FOF 8 is not clearly erroneous because Defendant's Exhibit M reflects that Lum did respond by letter to Palmer's October 16, 2003 letter and stated that Palmer asked if he was threatening her, and Palmer's testimony characterized Lum's letter as "the first time that he had actually put in writing sort of his threats to us that he - - you know, his intimidation and his threats."

Even assuming, *arguendo*, that the dates of death for certain people are erroneous in FOF 13, the specific dates are not relevant, and, therefore, any such error is harmless error.

For these reasons, the District Court's December 6, 2012 Judgment is affirmed.

DATED: Honolulu, Hawai'i, June 24, 2015.

On the briefs:

Jacob M. Merrill
for Defendant-Appellant

Keith A. Lee
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge